WEST PHILADELPHIA BANK, complainant,

*v.*

NELLIE T. CAREY, defendant.

[Heard and determined June 16th, 1924.]

**Conveyances—Deeds to Secure Future as Well as Existing Indebtedness—Neglect in Including Necessary Conditions— Difficulties Growing Out of Cases When Contract Says One Thing and Something Different was Intended.**

On bill, &c. On final hearing.

*Mr. Mark F. Casselman,* for the complainant.

*Mr. Waller S. Keown,* for the defendant.

LEAMING, V. C. (orally).

I have endeavored to the utmost of my power to ascertain with certainty, if possible, the truth of this matter now in dispute. There is evidence, of course, that this deed was given to secure future indebtedness of Mrs. Carey to the bank as well as the indebtedness which existed at the time the deed was executed, but there is a good deal of evidence indicating to the contrary. The testimony of some of the officers of the bank strongly indicating that this deed was not given in anticipation of this $5,000 indebtedness, or any future anticipated indebtedness of Mrs. Carey's.

The difficulties which are encountered are difficulties that arise, and naturally arise, from the execution of a document that says one thing and is intended to mean something else. If lawyers and laymen would execute writings that say what they mean, and mean what they say, the courts would be spared a good deal of trouble, and, perhaps, serious losses at times would be saved. There is no excuse, in my mind, for the execution of a deed that is intended to be operative as a mortgage, because, in the absence of some collateral writing, there is nothing in the world but the frail and uncertain memory of witnesses than can tell what the real transaction may have been. That was the situation there; the books of the bank apparently do not disclose what this deed was in fact given for; at any rate, the books and records of the bank have not been produced. The $5,000 note, which is sought to be tacked on this instrument as a subsequent obligation, which it is alleged it was intended to secure, contains on its face no suggestion that it was secured at all. It would have been perfectly easy to have had that note contained on memoranda over Mrs. Carey's signature that it was secured by this deed, but it isn't there. It would have been easy to have embodied some entry in the books of the bank at the time the deed was executed, or even subsequently at the time the $5,000 note was executed, that would have thrown light on the subject, but not one word in writing appears anywhere to show that this $5,000 note was ever anticipated by anybody to be secured by this deed. Such evidence as we have on that subject is the recollection of witnesses for and against that proposition. It is perfectly easy to draw a mortgage that will cover existing and future indebtedness, but unless the mortgage on its face discloses its purpose to secure future indebtedness, it would, ordinarily, not do it. Here is an instrument that isn't in form a mortgage; it doesn't mean what is says at all; this is a deed, but nobody contends it was anticipated to convey the property absolutely, so we having nothing in writing to guide us as to what indebtedness it secures. We only know it secures the $2,000 note by

the fact that that indebtedness existed at that time, and that that fact is not apparently in dispute. So, the circumstance that stands out in this case as pre-eminent, in my opinion, and dominant, is that at the time this deed was executed there was due to this bank from Mrs. Carey for indebtedness of herself $2,000, and no more, and it is not only a reasonable presumption, but the natural and ordinary presumption, that this deed, which was not intended as a conveyance, was to secure that indebtedness. Now, it appears that no further indebtedness of Mrs. Carey's to the bank arose for something like four or five months, and then her $5,000 note originated, and that wasn't an original indebtedness of Mrs. Carey's at all; that note was a mere transfer of $5,000 from the indebtedness of Mr. Carey to his wife by her giving a note for the same amount, having the proceeds of the note placed to her credit and giving a check to the bank for the amount of the note to take up one of Mr. Carey's old $5,000 notes; so this $5,000 note was not in any strict sense, or any real sense, an indebtedness of Mrs. Carey's, except that she at that time assumed an indebtedness of her husband's in that amount, and that four or five months after this deed was given. Indeed, the occasion of transferring $5,000 of Mr. Carey's indebtedness to his wife appears to have been the excessive amount of Mr. Carey's indebtedness and a desire upon the part of the bank to reduce it in anticipation of a visit of a bank examiner. If the $5,000 note had originated at about the time this deed was given in a transaction for Mrs. Carey's benefit for money she borrowed, or even at about the time of the transfer of a note from Mr. Carey's account to her's, the presumption would have measurably existed that the deed, even though shortly prior in date, was to secure that indebtedness; but it is difficult for me to believe that this bank took this deed in such a manner that they could from time to time, or at any time, say five months later, turn over Mr. Carey's note or notes to Mrs. Carey by merely shuffling the bookkeeping, and in that manner bring them under the security of this deed. I think,

without some writing to show that that was the well-under-stood intention and purpose of the parties when this deed was executed, I am unjustified in including that $5,000 in the security of this instrument.

I have tried hard, very hard, to ascertain the facts; I have given the bank every opportunity in the world to produce all the evidence that they can produce, but the trouble is there isn't much evidence that is valuable, simply because they did not see fit to reduce the real transaction to writing. It may be that I am losing $5,000 for the bank, which might be saved if my intellect were adequate to penetrate further into the uncertain realm of doubt, conjecture and mystery, but I think all the presumptions are against the claim. The policy of the law is against tacking on debts to an existing security without some writing to justify it, and, on the whole, my belief is that it is my duty to deny the prayer of the bill, to the effect that the $5,000 note is secured by this instrument. I will sign a decree declaring the deed to be in the nature of a mortgage, to secure the payment of the indebtedness at that time existing from Mrs. Carey to the bank, something short of $2,000 at that time, and no more.